**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**CLYDE WENDELL SMITH**                                    **PETITIONER**


**vs.**                                                    **Case No.: 4:17-cv-00087 SA**


**PELICIA E. HALL, COMMISSIONER,**                         **RESPONDENTS**
**MISSISSIPPI DEPARTMENT OF CORRECTIONS;**
**JIM HOOD, ATTORNEY GENERAL OF THE**
**STATE OF MISSISSIPPI**

---

**PETITIONER'S MOTION TO STAY PROCEEDINGS,**
**AND HOLD THIS MATTER IN ABEYANCE,**
**TO ALLOW PETITIONER TO ASSERT**
**UNEXHAUSTED CLAIMS IN STATE COURT**

---

Comes now, Petitioner, Clyde Wendell Smith, by and through counsel, filing this Motion to Stay Proceedings concerning the Petition for Habeas Corpus that Petitioner has filed in this case, and to hold this matter in abeyance, to allow Petitioner the opportunity to assert in state court certain unexhausted claims that have been identified in the Petition, stating as follows:

## I.  INTRODUCTION

Petitioner, Clyde Wendell Smith [hereinafter: "Clyde," "Smith," or "Petitioner"], respectfully requests that the Court stay his pending Petition for a Writ of Habeas Corpus, to allow him to pursue available state court remedies for unexhausted federal constitutional claims.  Smith believes that his Petition contains unexhausted claims that are potentially

1

meritorious. Since Respondent has not waived the exhaustion requirement, these claims must be "fairly presented" to the state courts to afford the state courts the opportunity to address the issues raised. *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam). The Mississippi Supreme Court permits death-sentenced prisoners to overcome bars to successive post-conviction petitions based on the ineffective assistance of post-conviction counsel. *See, e.g., Grayson v. State,* 118 So. 3d 118, 126 (¶ 14) (Miss. 2013); *Knox v. State*, 75 So.3d 1030, 1036-37 (¶ 18) (Miss. 2011) (citing cases in which the Court approved applications filed by Earl Wesley Berry and Dale Leo Bishop to file successive motions for post-conviction relief in *Berry v. State*, 2008–DR–00717 (order entered May 5, 2008) and *Bishop v. State*, 2008–DR–1122 (order entered July 9, 2008)); *Jackson v. State*, 732 So.2d 187, 191 (¶ 12) (Miss.1999)(first recognizing that defendants in death penalty cases were entitled to court-appointed counsel in state post-conviction proceedings). This Court may stay proceedings until the state court has an opportunity to address the federal claims. *See Rhines v. Weber*, 544 U.S. 269, 274 (2005)

Petitioner pursues this motion based on the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution. In addition, he directs the Court to recent opinions and orders of the Mississippi Supreme Court, Federal District Courts, and the Fifth Circuit discussed herein.

## II.  RELEVANT BACKGROUND

A.     **Procedural History**.

Clyde Smith, and his brother Jerome Smith, were tried together, convicted, and sentenced to death on July 1, 1993, the robbery and murder of Johnny B. Smith, in the Circuit Court of Leflore County. [C.P. 221-22 & 225-26.]

Clyde's conviction and death sentence were affirmed by a divided Mississippi Supreme

2

Court on December 10, 1998. *Clyde Wendell Smith v. State*, 729 So.2d 1191 (Miss. 1998), *cert. denied*, 527 U.S. 1043 (1999), ("Smith I").[1] .

On state post-conviction, all but one of Clyde's claims were dismissed without a hearing by the Mississippi Supreme Court on May 20, 2004. *Clyde Wendell Smith v. State*, 877 So.2d 369 (Miss. 2004). The state court remanded to allow a hearing on Clyde's *Atkins* claim, *Clyde Smith II*, 877 So.2d at 399, although the hearing was never held. In October of 2016, Clyde's state post-conviction counsel agreed to dismiss this claim with prejudice, *See* Order filed in *Smith v. State*, Mississippi Supreme Court Case No. 999-DR-01394 on October 27, 2016.

Petitioner then filed a motion with this Court seeking appointment of counsel to pursue federal habeas corpus relief, and counsel were appointed on June 20, 2017. [Dkt. # 2.] The federal habeas Petition was filed on August 24, 2017 [Dkt. # 3 and related Exhibits.]

On December 21, 2017 and January 13, 2018, Smith filed motions for the appointment of experts and seeking leave to proceed *ex parte*, Dkt. 8 & 13, which were denied on January 28, 2018. Dkt.14. On February 15, 2018, Smith refiled Motion for the Appointment of Expert Services. Dkt. 15.

The State filed its Answer to the Petition on March 27, 2018. [Dkt. # 22.]

On April 5, 2018, Respondent filed his Response to Smith's Motion for the Appointment of Expert Services. Dkt. 29. Smith filed his Reply to this Response on April 20, 2018. Dkt. 34. On May 5, 2018, this Court entered an order granting in part, and denying in part, Smith's request for the appointment of experts. Dkt. 39.

Petitioner acknowledged in the Petition that certain claims had been identified that were "unexhausted," as these claims had not previously been discovered or asserted by any of Smith's

---

[1] Clyde's conviction and death sentence were affirmed by a divided Mississippi Supreme Court on December 10, 1998. *Clyde Wendell Smith v. State*, 729 So.2d 1191 (Miss. 1998) ("Smith I").

prior attorneys. [Dkt. # 3 Petition.] In the Answer, the State raised a number of affirmative defenses, including the allegation that specific claims raised by Petitioner were "unexhausted."

In addition, in his Response to Petitioner's motion for mental health experts to support his allegations in his penalty ineffective assistance of counsel claim, Respondent asserted, that Smith is attempting to raise "two totally new claims that were not anticipated by [state post-conviction] counsel." Dkt. 29 at 7.

### III. LEGAL STANDARDS FOR A STAY.

In *Rhines v. Weber*, 544 U.S. 269, 278 (2005), the Supreme Court established the standards for staying federal habeas proceedings to allow the exhaustion of state law claims. The Court held that district courts have discretion to grant a stay in appropriate cases, but "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition" if the petitioner had (1) good cause for his failure to exhaust, (2) his unexhausted claims are potentially meritorious, and (3) there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. "In such circumstances, the district court should stay, rather than dismiss, the mixed petition." *Rhines*, 544 U.S. at 278.

Significantly, the Fifth Circuit has held that when a district court exercises its discretion to grant a stay to allow the exhaustion of state court remedies, that decision is not appealable, as the Court of Appeals has no jurisdiction to review such interlocutory, discretionary orders. *Grace v. Vannoy*, 826 F.3d 813, 816 (5th Cir. 2016). The Court stated: "We join the Eighth and Ninth Circuits and hold that orders granting *Rhines* stays are not appealable collateral orders." Id. at 820-21.

Petitioner respectfully submits that the standards for a stay of federal habeas

proceedings set forth in *Rhines* have been satisfied in regard to the unexhausted claims identified on behalf of Clyde Smith in this case, which are discussed below.

As with numerous other death row prisoners in Mississippi, Petitioner should have these proceedings stayed to pursue available state court remedies, unless the Court finds Respondent has waived the exhaustion requirement.

## A. Ineffective Assistance of Post-Conviction Counsel Provides Cause for the Failure to Exhaust

The ineffective assistance of post-conviction counsel provides cause for failing to exhaust claims. Significantly, it must be noted that the standard for establishing "good cause" for failing to exhaust a claim is not as great as that necessary to establish "good cause" necessary to overcome a procedural default. In *Ruiz v. Quarterman,* 504 F.3d 523, 529 n.17 (5th Cir. 2007), the Fifth Circuit held that good cause for failure to raise a claim in an earlier state court proceeding is taken in the "equitable sense."

In *Pace v. Deguglielmo,* 544 U.S. 408, 416 (2005), the Supreme Court found good cause for non-exhaustion due to the petitioner's "reasonable confusion" about the timeliness of a state court filing, and held that this was sufficient to justify staying the federal proceedings to allow exhaustion. "Reasonable confusion on the part of a petitioner is less stringent than acts that have been found sufficient to establish cause for procedural default." *Rhines v. Weber*, 408 F. Supp.2d 844, 849 (D. S.D. 2005). Thus, cause for non-exhaustion should not "require a showing of some extreme or unusual event beyond the control of the defendant." *Riner v. Crawford*, 415 F. Supp.2d 1207, 1210 (D. Nev. 2006); *see also Jackson v. Roe*, 425 F.3d 654, 661-62 (9th Cir. 2005).

A failure on the part of post-conviction counsel constitutes good cause for failure to

exhaust. *Rhines¸* 408 Supp.2d at 848 ("Rhines meets the 'good cause' requirement due to the ineffective assistance of his post-conviction counsel"). *See also Chandler v. Epps*, 2008 WL 4683421 (N.D. Miss. Oct. 22, 2008) ("his reliance on counsel to pursue his state remedies should constitute good cause for the issuance of a stay").

In *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012), the United States Supreme Court held that a habeas corpus petitioner could show "cause" to overcome a procedural default if the default concerned a claim of ineffective assistance of counsel and was not properly raised because of ineffective assistance of post-conviction counsel in the first state proceeding at which the issue could be raised. However, if the state court provides an available remedy, "the underlying concern of applying principles of comity and federalism that result in requiring a petitioner to show that the assistance of counsel was so ineffective as to violate the Federal Constitution does not exist, because petitioner can present his claims to state court." *Rhines*, 408 F. Supp.2d at 849; s*ee also Pinholster v. Cullen,* 131 S. Ct. 1388, 1412 (2011) (a petitioner "can always return to state court presenting new evidence not previously presented") (Breyer, J., concurring).

This Court has previously recognized that a prisoner's reliance on his state post-conviction attorney to exhaust his state remedies as to all claims may constitute "good cause" for a remand to state court under the standards established in *Rhines,* in order to allow the claims to be exhausted. *Chandler v. Epps*, 2008 WL 4683421, at *1 (N.D. Miss. 2008). In *Chandler*, this Court concluded that **the prisoner's "reliance on counsel to pursue his state remedies should constitute good cause for the issuance of a stay."**

Petitioner respectfully submits that under these standards, "good cause" has been shown for a stay of the current proceedings, so that Petitioner can exhaust his state law claims, many of which hinge on the ineffectiveness of his post-conviction counsel.

This Court has previously recognized the post-conviction counsel's ineffective as a possible defense in Petitioner's penalty phase ineffectiveness claim. Dkt. # 39, Order Regarding Petitioner's Motion for Funding, (May 2, 2018) (recognizing the exception created under Martinez to the general rule prohibiting evidence that is introduced for the first time in federal habeas proceedings).

In regard to the claims outlined below that require remand to the state court, Petitioner respectfully submits that the nexus between these claims is the effective assistance that Petitioner received from his state post-conviction attorney, who failed to raise these issues in the initial state post-conviction petition that was filed on behalf of Clyde Smith.

## C.    Staying these proceedings is appropriate because Petitioners claims are "potentially meritorious."

The second factor identified in *Rhines v. Weber* to determine the appropriateness of staying federal habeas proceedings is consideration of whether the unexhausted claims are "potentially meritorious." *Rhines*, 544 U.S. at 278. To establish that the claim is potentially meritorious, a petitioner cannot rely on general assertions, but rather, must include specific allegations. *See Bolin v. McDaniel*, 2011 WL 1750698 at *3 (D. Nev. May 6, 2011).

In determining whether a claim is "potentially meritorious" under *Rhines*, 544 U.S. at 278, the district courts do not require a "full adjudication of the merits of this claim, including the credibility of contradicting evidence." *Carpenter v. Thaler*, 2010 WL 4279426, at *1 (N.D. Tex. 2010). In fact, this would be contradictory to the system for federal habeas review, because "[i]t is for the state courts in the first instance to make these credibility determinations necessary to a full adjudication, to which [the federal courts] must then show deference under 28 U.S.C.

2254(d) and (e)." *Carpenter*, 2010 WL 4279426, at *1. Therefore, "[a]batement is required for 'potentially meritorious' claims." Id.

In *Carpenter*, the district court also noted that "in light of the fact that a stay and abatement is properly granted on one claim, it is unnecessary to determine whether a stay and abatement would be necessary on any other ground and the motion to stay on those grounds is rendered moot." Id. at *2. Therefore, the court stated: "In order to avoid any further delay, the parties are encouraged to fully exhaust any potential issue that may be properly raised in the state courts before returning to this Court." Id. at *2.

In the sections set forth below, Petitioner will discuss in greater detail the factual basis that supports his potentially meritorious claims.

**D.      Petitioner has not engaged in dilatory tactics or cause undue delay in presenting his claims.**

In regard to the third prong under the *Rhines* standard for a stay, Petitioner respectfully submits that for each of his unexhausted claims, there is no indication that he has engaged in dilatory tactics. All of these claims have been identified by habeas counsel after investigation of Petitioner's claims, which have been timely asserted in these proceedings. Therefore, Petitioner respectfully submits that the third prong of the test set forth in *Rhines* has been satisfied as to each claim. In the arguments set forth below, Petitioner will address the merits of each of each unexhausted claim, as required under the second prong of the *Rhines* standard.

Accordingly, for the reasons set forth below, Petitioner respectfully submits that his unexhausted claims are potentially meritorious, that he has established good cause based on the allegations that his post-conviction attorney was ineffective by not presenting these claims in the initial state post-conviction proceedings, and that Petitioner has timely presented these

claims through the efforts of federal habeas counsel, and has not engaged in dilatory tactics of caused undue delay. Therefore, Petitioner respectfully requests that the stay be granted.

### IV. PETITIONER'S UNEXHAUSTED CLAIMS

Petitioner's counsel acknowledged in the Petition that certain claims had been identified that were "unexhausted," as these claims had not previously been identified or asserted by any of Clyde Smith's prior attorneys. [Dkt. # 3, Smith's Petition.] In the Answer, the State raised a number of affirmative defenses, including the allegation that three specific claims raised by Petitioner were "unexhausted," including, including Claim XIV 9[Dkt. # 22, State's Answer at 37]; Claim XV [Dkt. # 22, State's Answer at 37], and a second claim erroneously misnumbered as Claim XV [Dkt. # 22, State's Answer at 38].

In addition, Respondent has generally alleged in other portions of the Answer and in other pleadings that other claims are unexhausted, including Claim XI, concerning ineffective assistance of counsel at the sentencing phase, and the Atkins claim. Arguments as to each of these claims are set forth below.

### A. CLAIM XI: Trial counsel were ineffective for failing to investigate and present mitigating evidence at the penalty phase.

#### 1. Ineffective assistance of counsel at the penalty phase by failing to present mitigation evidence.

In Claim XI, Petitioner asserted that trial counsel were ineffective for failing to investigate and present available mitigating evidence at the penalty phase. This claim also encompasses the inadequate investigation conducted by Clyde's state post-conviction counsel, who did not develop the psychological evidence that he was authorized to pursue.

Trial counsel failed competently prepare for the penalty phase of the proceedings. They failed to

9

conduct even the most rudimentary investigation Clyde's life, his social, educational and psychiatric history. They failed to seek out readily available school and psychological records, failed to interview family members, and failed to seek the assistance of appropriate mental health experts to assist in the investigation and presentation of mitigating evidence. As a result, counsel presented a single mitigating witness, Clyde's mother, Leona Smith, who testified briefly to only the most basic facts of Clyde's life. This evidence was woefully incomplete: it presented only minimal facts regarding Clyde's background, and completely failed to provide any context to this information or explain how it related to Clyde's behavior at the time of the offense. Readily available evidence could have been presented that would have created a more accurate, complete and considerably more mitigating picture of Clyde. Counsel's conduct deprived Smith of his right to the effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668 (1984); *Williams v. Taylor*, 529 U.S. 362 (2000); *Wiggins v. Smith*, 539 U.S. 510 (2003).

As described in his habeas petition, there were numerous red flags suggesting Smith suffered from early childhood trauma, mental illness and possible neurological deficits. Not with standing this, trial counsel in this case made no effort to obtain the services of a mental health profession the help them investigate and develop this evidence. Nor did they seek to obtain any of the records, or interview any of the witnesses who have since provided valuable information concerning Smith's life history. Failing to investigate and gather mitigation evidence resulted from lack of effort, "not reasoned strategic judgment." *Wiggins*, 539 U.S. at 526. This was not a minor, innocuous oversight. *Strickland*, 466 U.S. at 695-96. \

Numerous courts have found counsel ineffective under these circumstances, even when those lawyers had done much more to investigate than Smith's counsel. [2]

---

[2] *See, e.g.*, *Porter v. McCollum*, 558 U.S. 30 (2009) (*per curium*) (heroic military service, struggles to regain normality upon his return from war, childhood history of physical abuse, brain abnormality, difficulty reading and writing, and limited schooling); *Rompilla, supra,* (childhood trauma and abuse, alcohol abuse, organic brain damage, low IQ); *Wiggins, supra* (dysfunctional background, physical and sexual abuse); *Williams, supra* (low IQ, traumatic childhood, good prison behavior, learned carpentry skills in prison); *Walbey v. Quarterman*, 2009 U.S. APP. LEXIS 942 (5th Cir. 2008) (fuller details of

If Clyde's troubled childhood and mental health issues, including his low I.Q. score of 75 based on testing conducted when he was thirteen years old, lack of parental guidance and supervision, repeated commitments to the juvenile detention facility, incarceration in the Mississippi State Penitentiary at the age of 17, and other issues concerning his dysfunctional home life as related by his family members in their affidavits, had been properly presented to the jury through a fully developed psycho-social history prepared by a competent and qualified psychologist or other mental health expert, this would almost certainly have reduced his culpability in the eyes of the jury. Petitioner's former attorneys failed to develop this information or retain such an expert to prepare the psycho-social history.

Counsel failed to uncover readily available evidence that would have supported both statutory and non-statutory mitigating factors, and would have lessened the weight of the aggravating factors presenting in support of a death sentence. This was deficient performance. There is a reasonable probability, had counsel adequately investigated, developed and presented the forgoing mitigating evidence, Clyde Wendell Smith would not have been sentenced to death.

**Post Conviction Counsel was ineffective with respect to developing mental health evidence to support this claim**

This Court has already recognized the post-conviction counsel's ineffective as a possible defense in Petitioner's penalty phase ineffectiveness claim. Dkt. # 39, Order Regarding

---

history, character and background lead to penalty phase relief under *Strickland*); *Williams v. Allen*, 542 F.3d 1326 (11th Cir. 2008); *Gray v. Banker*, 529 F.3d 220 (4th Cir. 2008); *Stevens v. McBride,* 489 F.3d 883, 896 (7th Cir. 2007); *Morales v. Mitchell*, 507 F.3d 916, 931-35 (6th Cir. 2007); *Haliym v. Mitchell*, 492 F.3d 680, 712 (6th Cir. 2007); *Harries v. Bell,* 417 F.3d 631, 638 (6th Cir. 2005); *Smith v. Mullin*, 379 F.3d 919, 942 (10th Cir. 2004); *Hooper v. Mullin,* 314 F.3d 1162, 1170-71 (10th Cir. 2002); *Hall v. Washington*, 106 F.3d 742, 749-750 (7th Cir. 1997); *Glenn v. Tate*, 71 F.3d 1204, 1211 (6th Cir. 1996) (citing empirical evidence of juror sympathy to claims of "organic brain problems"); *Brewer v. Aiken*, 935 F.2d 850, 858-859 (7th Cir. 1991).

Petitioner's Motion for Funding, (May 2, 2018) (recognizing the exception created under Martinez to the general rule prohibiting evidence that is introduced for the first time in federal habeas proceedings).

In his Response to Petitioner's motion for mental health experts to support his allegations of ineffective assistance of counsel at the penalty phase claim, Respondent insisted that state post-conviction counsel failed to diligently seek fund for experts and/or, that Smith was attempting to raise "two totally new claims that were not anticipated by [state post-conviction] counsel." ECF Doc 29 at 7.

Smith challenged the State's allegations as what happened in state-post conviction proceedings, but alternatively asserted that even assuming that some sub-issues are unexhausted and procedurally defaulted, Smith can establish cause for the default based on post-conviction counsel's ineffectiveness under *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Trevino v. Thaler*, 569 U. S. 413 (2013). See Ayestas, 200 L. Ed. 2d at 383.

In *Canales v. Stephens*, 765 F.3d 551, 569 (5th Cir. 2014), for example, the Fifth Circuit concluded that post-conviction counsel were deficient for failing to conduct an adequate post-conviction investigation to support unexhausted portions of Canales' ineffective assistance of trial counsel at the penalty phase claim, due to a misunderstanding of funding for state habeas investigations.  Id. at 569 (citing Hinton v. Alabama, 134 S. Ct. 1081, 1088, (2014) (per curiam)).

Although this Court did not expressly rule on the exhaustion issue, the Court did grant (in part) Smith's request in light of *Ayestas* and *Martinez*, ECF Doc. # 39 at 2.  In light of this Court's Order, and because the Supreme Court has held when reviewing claims the court must "evaluate the totality of the available ... evidence - - both that adduced at trial" and the additional

evidence produced in post-conviction proceedings that adequate counsel would have procured, *Williams v. Taylor*, 529 U.S. 362, 397 (2000); *Strickland v. Washington*, 466 U.S. 668, 695-96 (1984), Smith respectfully submits that this claim is "potentially meritorious," so that the stay should be granted under *Rhines*, and this claim can be remanded to the state court for full consideration on the merits.

### 2. The Atkins Claim.

Habeas counsel's investigation reveals that post-conviction counsel was not diligent with respect to Petitioner's Atkins claim either. After the limited remand for an Atkins hearing, PC counsel obtained the services of Dr. Marc Zimmerman, a clinical psychologist, who administered a WAIS-III, Smith's full scale I.Q. was 75. Based on this evaluation, Dr. Zimmerman concluded that Smith met the diagnostic standard for mental retardation as defined by the AAMR and DSM-IV-TR. *Id.* at 9.

The State's expert administered the WAIS-IV on September 22, 2015. This report has been sealed, but Respondent advised the full scale score was 92. Post-conviction counsel retained the services of Bruce K. McCormick, PhD, to examine the protocols of both tests. Dr. McCormick identified potential scoring errors in the WAIS-III administered by Dr. Zimmerman, and as a result Smith full scale I.Q. could have been three points higher – from a 75 to a 78. Dr. McCormick recommended that Smith be retested with either with an instrument other than the WAIS, or with another WAIS-IV, "allowing for the expected practice effect from the use of the same instrument a few months apart." *Id.*

Post conviction counsel did not follow this advice and instead hired Dr. Malcolm Spica, a clinical psychologist and neuropsychologist, administered another WAIS-IV. On this test Smith obtained a Full Scale I.Q. score of 77. Post conviction counsel then dismissed the claim with

prejudice.

Dr. Spica's testing does not, under the clinical standards, rule out mental retardation. Multiple factors must be taken into account when assessing when interpreting IQ scores, including, but not limited to the practice effect, the age of the test, testing conditions, the effect of psychotropic medication, developmental processes in incarcerated individuals. Upon information and belief, one of more of these factors have caused Dr. Spica's testing to overestimate Smith's true intelligence.

**B. CLAIM XIV**. **Smith was denied his Sixth Amendment right to effective assistance of conflict-free counsel at trial because his trial attorney, Wallace Stuckey, was acting under the influence of an actual conflict that adversely affected his performance at his trial.**

In his Petition, Smith has alleged that trial counsel Stuckey's simultaneous representation of Clyde in the capital case, Leflore County Cause Number 22,191, and co-defendant Jerome, in the aggravated assault case, Humphreys County Cause Number 4698, that was being used as aggravation was actual conflict of interest that adversely affected his performance at trial. *See Cuyler v. Sullivan*, 446 U.S. 335 (1980); *Strickland v. Washington*, 466 U.S. 668 (1984).

Petitioner submits that post-conviction counsel was ineffective for failing to seek and review the records concerning the prior convictions that were used to support the aggravating factor at trial. The Supreme Court has emphasized the importance of reviewing the files concerning evidence the state intends to use for this purpose. *Rompilla v. Beard*, 545 U.S. 374 (2005). Had post-conviction counsel perform this basic task, he would have discovered the factual predicate for this conflict of interest claim, and Johnson v. Mississippi claim.

This claim is potentially meritorious.

The State charged both defendants in the aggravated assault case, just weeks prior to the

14

Capital Murder trial, because the State wanted to use the aggravated assault convictions as "aggravating factors" to support the imposition of the death penalty in the Capital Murder trial in June.

During the trial, Mr. Stuckey argued on behalf of Jerome that Clyde was more culpable, because he was the primary aggressor, he was the only person who possessed the deadly weapons (brass knuckles and a pistol), and that Jerome should only be held liable for simple assault, (because he just had a fist fight with the victim), and not for Clyde's actions which involved the use of deadly weapons. These arguments were directly contrary to Clyde's interests, even though Mr. Stuckey was at that same time also serving as Clyde's attorney in the Capital Murder case, Cause Number 22,191.

During the trial, when cross-examining the victim of the assault, Lynn Robinson, Mr. Stuckey made a point of clarifying that only Clyde Smith fired a gun during the altercation, and only Clyde hit Mr. Robinson with "brass knuckles." [Exhibit A, TR. 47-48.][3] After the prosecution rested, Mr. Stuckey "strenuously argued" for a directed verdict on behalf of Jerome, stating: "I think the evidence fails wholly on both counts of aggravated assault with respect to Pete [Jerome] as against Lynn Robinson. And, if there is anything with respect to Pete [Jerome] against Lynn Robinson, it couldn't be more than simple assault which was hitting with his fists." [Exhibit A, TR. 87-88.] Thus, Mr. Stuckey argued that Jerome was only involved in a fist-fight that would amount to nothing more than simple assault, and "[t]here was no proof that [Jerome] hit anybody with brass knuckles. No proof that [Jerome] ever had a gun in his hand and threatened anybody with a gun. No proof that [Jerome] shot anybody." [Exhibit A, TR. 88.] Mr.

---

[3] Exhibit A is the transcript of the trial in the aggravated assault case, Humphreys County Circuit Court Cause Number 4698.

Stuckey concluded that "the case has not been proved against [Jerome] on aggravated assault."

[Exhibit A, TR. 89.]

In making these arguments, Mr. Stuckey sought to place all responsibility for the aggravated assault on Clyde's shoulders, even though Clyde was also his client. When the prosecutor argued that Clyde and Jerome were acting in concert, Mr. Stuckey responded:

Your Honor, still beg to question **where is the proof that [Jerome and Clyde] were acting in concert with respect to the brass knuckles and the gun.** Admittedly, this [Jerome] is the man who had the words and this is where it started and they jumped on Lynn. Wendell walks out and breaks that up, two against one and that may separate one on one. **NOW WHAT CLYDE DOES AFTER THAT IS CLYDE'S PROBLEM.** … The problem is the evidence doesn't show that a gun was shown and both of them started the fight or the brass knuckles were shown and both of them started the fight. **There is no evidence to show that Pete [Jerome] knew what is arguably, if we can just argue about it, WHAT CLYDE WAS GOING TO DO.** It started out as a fist fight. He [Jerome] never escalated it from a fist fight.

[Exhibit A, TR. 90-91 (emphasis added).]

Thus, Mr. Stuckey was clearly arguing that only Clyde was culpable in regard to the aggravated assault charges. Betty Smith testified for the defense, stating that **Jerome took a shotgun** that belonged to Wendell (Bobcat) Wright, and left the scene of the altercation. [Exhibit A, TR. 100-101.] The prosecutor asked Betty Smith whether "this gun was found, I believe, in your sister's car some several months later." [Exhibit A, TR. 101.] Mr. Stuckey objected and stated: "That has nothing to do with this case. **It concerns another case and I would object to that.** It is irrelevant to this case." [Exhibit A, TR. 101-104.] The "other case" that Mr. Stuckey was referring to is the Capital Murder case, and this shotgun appears to be the same one that was later found in the car that Jerome and Clyde had been driving, after they were arrested and charged in the death of the liquor store owner.

In his closing argument on behalf of Jerome in the aggravated assault case, Mr. Stuckey asserted:

16

I am not going to reargue the Motion [for Directed Verdict] but the only thing I want to talk about is I believe that the proof is not sufficient and does not arise to connect Pete [Jerome] as an accomplice with Clyde. **HE WAS NOT ACTING IN CONCERT WITH CLYDE.** … It takes something more and there is nothing, if it please the Court, to show that this man [Jerome] had knowledge that there was any intent on Clyde's part to shot (sic) at anybody or to hit anybody with any brass knucks. Sure, there was a statement made about getting into a fist fight. I heard a lot of people say, come on, let's kill them when you are talking about just a fist fight. But there is nothing to indicate that he [Jerome] had knowledge of anything else.

Exhibit A, TR. 111-112 (emphasis added). Both defendants were convicted of two counts of aggravated assault in the bench trial on April 22, 1993 in Cause Number 4698.

In the subsequent Capital Murder trial, Mr. Stuckey later argued:

I do want the record to reflect that the defendant, Clyde Smith, has elected to go to Court with this knowledge. We also advised him that in pleading guilty to this charge with – that a life sentence would in fact have no affect (sic) on his incarceration since he's already serving four life terms without parole [in Humphreys County Cause Number 4698]. **Now the only possibility that something would upset that is if he would be successful in an appeal in getting those four life terms reversed. We found that to be a remote possibility and advised him of that.**

TR. 225-26 (emphasis added). At the time he made this argument, Mr. Stuckey was representing simultaneously acting as the attorney of record for Clyde's co-defendant Jerome in his direct appeal of the convictions in Case Number 4698.

The second trial for "Capital Murder" trial began on June 28, 1993 in Leflore County Cause Number 22,191. In that case, the State used Clyde's aggravated assault convictions as "aggravating factors" to support the imposition of the death penalty. Mr. Stuckey's simultaneous representation of Clyde in Cause Number 22,191, and Clyde's co-defendant, Jerome in Cause Number 4698, was adverse to Clyde's interest and was arguably instrumental in securing Clyde's aggravated assault convictions. In addition, Mr. Stuckey continued to actively represent Jerome in his direct appeal, while he was at the same time representing Clyde in the Capital Murder trial.

17

Under the rule established in *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980), when an attorney's representation of two co-defendants, though not objected to at trial, results in an actual conflict of interest that adversely affects the attorney's performance, the defendants' Sixth Amendment rights have been violated, even without a showing that the conflict caused the defendant to lose his or her case. "Thus, a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." Id. In *Sullivan*, no "special circumstances" triggered the trial court's duty to inquire about a conflict of interest. Id. at 346. Petitioner respectfully submits that the facts in these cases clearly establishes that Mr. Stuckey had an actual conflict of interest because of his simultaneous representation of Clyde and Jerome in the two parallel cases.

The conflict of interest rule was also discussed in *Mickens v. Taylor*, 535 U.S. 162, 172, n. 5 (2002), where the Supreme Court explained: "[T]he *Sullivan* standard is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect. An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." In this context, "conflict of interest" means "a division of loyalties that affected counsel's performance." Id.

Significantly, the Fifth Circuit has held that the <u>Cuyler</u> standard "governs multiple-representation situations where no timely objection was raised." *Salts v. Epps*, 676 F.3d 468, 475 (5th Cir. 2012). In *Salts*, the Mississippi appellate court had concluded that the defendants had waived any claim concerning conflict of interest in a joint representation situation by failing to timely object, or in the alternative, that the defendants failed to demonstrate an "actual conflict of interest," and the court concluded that "a court need conduct an inquiry into the propriety of a joint representation only when an actual conflict has been shown." Id. at Id. at

18

475-76.

Petitioner respectfully submits that the holding in *Salts* is applicable to the case at bar. Even though there was no timely objection by Petitioner concerning the joint representation of Clyde and Jerome by Mr. Stuckey simultaneously in the capital murder and aggravated assault cases, an actual conflict of interest arose when Mr. Stuckey abandoned the common defense of both defendants in the aggravated assault case, and accused Clyde of being the only one who possessed and used the brass knuckles and the pistol in the aggravated assault incident. As a result, Mr. Stuckey's loyalties were divided between simultaneous representation of Jerome and Clyde, especially since the two cases were inter-related. The aggravated assault trial was conducted specifically to allow the State to use those convictions as "aggravating factors" to support the imposition of the death penalty. Petitioner respectfully submits that he should be entitled to present this claim to the state courts.

Petitioner respectfully submits that he was denied effective assistance of counsel because Mr. Stuckey had a substantial conflict of interest that cannot be disputed. Mr. Stuckey assumed legal representation of Jerome in the aggravated assault case, Cause Number 4698, after he had already been appointed to represent Clyde in the Capital Murder case, Cause Number 22,191, where Jerome was a codefendant. Specifically, Mr. Stuckey argued against Clyde's interest in the aggravated assault case by asserting that Clyde was more culpable than Jerome. Therefore, Mr. Stuckey's loyalties to both clients were in irreconcilable conflict.

In the capital murder trial, the State presented the aggravated assault convictions in support of the prior-violent-felony aggravating factor to justify the death penalty. Mr. Stuckey's simultaneous representation of Clyde in the capital case, and his representation of co-defendant Jerome, in the aggravated assault case that was being used as aggravation was actual conflict of

interest that adversely affected his performance at trial. *See Cuyler v. Sullivan*, 446 U.S. 335 (1980); *Strickland v. Washington*, 466 U.S. 668 (1984). In *Cuyler*, the Supreme Court held that "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Cuyler*, 446 U.S. at 349–50.

**C. CLAIM XV**.           **Smith's death sentence is based, in part, on a prior conviction vacated after trial, in violation of the Eighth Amendment.**

Claim XV is based on the fact that Clyde's prior conviction for "attempted aggravated assault with a deadly weapon," in Cause Number 4698, which was offered as an aggravating factor at sentencing in his Capital trial in Cause Number 22,191, was reversed on direct appeal on December 3, 1996, before his direct appeal was finalized in the Capital case on December 10, 1998. [**Exhibit B**, Unpublished Opinion in Clyde and Jerome Smith v. State, Case No. 93-KA-00586 COA (Miss. Ct. App. decided 12/3/1996.] Therefore, the Capital Murder conviction was based on an invalid aggravator, which necessarily requires that Clyde receive a new sentencing hearing.

This claim is clearly unexhausted because the Mississippi Supreme Court has not been afforded the opportunity to re-weigh the aggravating and mitigating factors since Clyde's attempted aggravated assault conviction was reversed by the Court of Appeals on December 3, 1996. Therefore, allowing Petitioner the opportunity to file a successor state post-conviction petition is necessary in order to afford the state court this opportunity

Petitioner submits that post-conviction counsel was ineffective for failing to seek and review the records concerning the prior convictions that were used to support the aggravating factor at trial. The Supreme Court has emphasized the importance of reviewing the files

20

concerning evidence the state intends to use for this purpose. *Rompilla v. Beard*, 545 U.S. 374 (2005). Had post-conviction counsel perform this basic task, he would have discovered the factual predicate for Smith's conflict of interest claim, and Johnson v. Mississippi claim.

This claim is potentially meritorious.

Mr. Mounger and Mr. Stuckey were both representing Clyde and Jerome respectively in the direct appeal of their aggravated assault convictions, and they received notice of the court's decision reversing one of the aggravated assault convictions on December 3, 1996. This was while they were both also representing Clyde in his direct appeal in the Capital Murder case. On or about March 3, 1995, Mr. Stuckey actually filed the brief on Clyde's behalf in his direct appeal in the Capital case. However, he never sought to alter or supplement that brief to advise the Mississippi Supreme Court of the reversal. This fact was not discovered by Clyde's post-conviction counsel.

Mississippi is a "weighing state," in regard to invalidated aggravating factors, based on Miss. Code Ann. § 99-19-105(3)(d) which specifically provides: "Should one or more of the aggravating circumstances be found invalid on appeal, the Mississippi Supreme Court shall determine whether the remaining aggravating circumstances are outweighed by the mitigating circumstances or whether the inclusion of any invalid circumstance was harmless error or both."

The United States Supreme Court has classified Mississippi as a "weighing state" in regard to applying the "harmless error analysis" when an aggravating factor was used to impose the death penalty, and later deemed to be invalid. *Stringer v. Black*, 503 U.S. 222, 229 (1992). In *Stringer*, the Court explained:

21

> Although we later held in *Clemons v. Mississippi* that under such circumstances a state appellate court could reweigh the aggravating and mitigating circumstances or undertake harmless-error analysis, **we have not suggested that the Eighth Amendment permits the state appellate court in a weighing State to affirm a death sentence without a thorough analysis of the role an invalid aggravating factor played in the sentencing process.**

*Stringer v. Black*, 503 U.S. at 230 (emphasis added).

Furthermore, it should also be noted that the United States Supreme Court has held that in cases where an invalidated aggravator "allowed the sentencer to consider evidence that would otherwise not have been before it, **due process would mandate reversal** ...." *Brown v. Sanders*, 546 U.S. 212, 221 (2006). It is exactly such a claim that Petitioner now seeks to present to the Mississippi Supreme Court by way of a successive petition for state post-conviction relief concerning his invalidated aggravated assault conviction.

The U.S. Supreme Court addressed a similar situation in J*ohnson v. Mississippi*, 486 U.S. 578 (1988), where the defendant had been convicted of capital murder and sentenced to death, and subsequently filed a petition for state post-conviction relief, arguing that one of the prior felony convictions in the state of New York that was used to justify the imposition of the death penalty had been invalidated by a New York court, after his capital murder trial had concluded. The Mississippi Supreme Court denied the defendant's petition for post-conviction relief in *Johnson v. State*, 511 So.2d 1333 (Miss. 1987), by reweighing the aggravating factors and concluding that "the jury found three aggravating circumstances to support its verdict. Even if we conceded that the jury had no authority to consider [the invalidated New York] conviction, the remaining two aggravating circumstances were sufficient to support the jury's verdict." *Johnson*, 511 So.2d at 1337.

The U.S. Supreme Court granted certiorari and rejected this argument, holding that denying a motion for post-conviction relief from a death sentence, which was based, at least in

22

part, on a felony conviction that was later vacated, violated the Eighth Amendment prohibition against cruel and unusual punishment. *Johnson v. Mississippi*, 486 U.S. 578, 584 (1988).

Recently, in *Gillett v. State*, 148 So. 3d 260 (Miss. 2014), the Mississippi Supreme Court invalidated a death sentence due to the consideration of an invalid aggravating circumstance. In *Gillett*, the state court had determined on direct appeal that one of the prior convictions that was used as an aggravating factor for the imposition of the death penalty, "was an invalid aggravator and should not have been presented to the jury." *Gillett*, 148 So.3d at 263 (¶ 8). However, the court re-weighed the evidence offered at the sentencing phase, and concluded that the mitigating evidence presented "[did] not outweigh the remaining three aggravating circumstances". Therefore, the inclusion of the invalid aggravator was deemed to be "harmless error." *Gillett*, 148 So.3d at 264 (¶ 8).

In his post-conviction petition, Gillett contended that the "reweighing" of aggravating and mitigating factors violated his due process rights under the United States and Mississippi Constitutions, and the holding in *Brown v. Sanders*, 546 U.S. 212 (2006). *Gillett*, 148 So.3d at 264 (¶ 8). The Mississippi Supreme Court rejected the prosecution's argument that re-weighing was proper in this circumstance, stating:

> [C]ontrary to the State's argument, Gillett could not assign error to this Court's "reweighing" until this Court determined one aggravator to be invalid and engaged in the reweighing of aggravating and mitigating factors. Gillett could not have raised this assignment of error on direct appeal.
> Furthermore, this Court has specifically "recognized [an] exception [ ] to procedural bars for claims asserting ... denial of due process at sentencing." (citing Rowland v. State ("Rowland II"), 98 So.3d 1032, 1036 (Miss. 2012) (citing Kennedy v. State, 732 So.2d 184, 186–87 (Miss.1999)). Gillett argues that he was denied due process in sentencing, and, therefore, under Rowland II, his claim is not time-barred nor barred by res judicata. As such, we will consider this issue.

*Gillett*, 148 So.3d at 264 (¶ 11).

In the case at bar, just as in *Johnson*, supra, the prosecution argued that **Clyde should**

**receive the death penalty because he had "previously been convicted of violent crimes, that being those two counts of aggravated assault."** [TR. 674.]  The invalidated conviction was for "attempted aggravated assault by the use of a firearm," and this clearly impacted the jury's decision to impose the death penalty.  Petitioner respectfully submits that because the jury in his case heard that he had been convicted of attempted aggravated assault with a pistol, which was clearly the most serious of his prior convictions, a new sentencing hearing is warranted.

**D.     CLAIM XV (second claim misnumbered XV).  Petitioner's death sentence was based on invalid aggravating factors because a mandatory bifurcated hearing was not conducted in his aggravated assault trial in Case No. 4698 prior to his being sentenced to life without parole as a habitual offender, and those convictions were used as aggravating factors for the death penalty.**

The Petition contains a second claim that erroneously numbered as second **Claim XV.** This is a Due Process claim because Petitioner was not afforded the procedures that were required under Mississippi law at the time of his convictions as a habitual offender in Humphrey's County Cause Number 4698, which resulted in his receiving four life sentences without parole that were used as aggravating factors in his Capital Murder case.

Petitioner respectfully submits that these sentences were obtained in violation of his due process rights, and therefore were invalid, because the trial court failed to conduct a mandatory bifurcated hearing at sentencing on the habitual offender charge in Cause Number 4698, in order to afford Petitioner the opportunity to present mitigating evidence under Rules 5.13 and 6.04 of the Mississippi Uniform Criminal Rules of Circuit Court Practice, which were in effect at the time of that trial. Therefore, Petitioner respectfully submits that this resulted in a violation of Petitioner's fundamental right to due process under the law.

The sentencing as a habitual offender in Cause No. 4698 occurred immediately after the

guilty verdicts were rendered, without the benefit of a presentence investigation, and without

allowing Clyde to introduce any mitigation evidence. Clyde's attorney, Mr. Mounger, had filed

a Motion for Bifurcated Trial based on then-existing Rule 5.13 of the Uniform Criminal Rules

of Circuit Court Practice. [Habeas Ex. 12.]  Although Rule 5.13 was subsequently deleted from

the state court criminal rules, the complete text of the rule is set forth in *May v. State*, 398 So.2d

1331, 1337 (Miss. 1981). Subsection 2 of Rule 5.13 is quoted in *May* as follows:

> (2) Upon conviction, or after a plea of guilty, there shall be a hearing before the
> trial judge as follows:
> a. A **presentence investigation shall be conducted** and a report thereof shall be
> made, consisting of a complete record of the offender's criminal history, educational
> level, employment history, and when required by the court, his psychological condition,
> and such other information as the judge shall deem necessary. A copy of said report
> shall be delivered to the defendant for use by him and his attorney.
> b. The state may introduce evidence of aggravation of the offense to which the
> defendant has been convicted or pleaded guilty.
> c. The defendant may introduce in evidence any evidence he deems necessary to
> contradict or supplement any information contained in the presentence investigation
> report.
> d. The defendant may introduce any evidence of extenuation or mitigation.
> e. The state may introduce evidence in rebuttal of evidence of the defendant.
> f. A **record shall be made** of the above proceedings. This record shall not be a
> part of the record on appeal but shall be maintained in the office of the circuit clerk of
> the trial court as a part of the record in that court.

May, 398 So.2d at 1337 (Rule 5.13, Uniform Criminal Rules of Circuit Court Practice)

(emphasis added).

Also pertinent to this claim is Rule 6.04 of the Uniform Criminal Rules of Circuit Court

Practice adopted by this Court on August 15, 1979, which at the time of the trial in Case No.

4698 provided:

> In cases involving **enhanced punishment for subsequent offenses under the
> Habitual Criminal Statute**, Miss. Code Ann. s 99-19-83 (Supp.1978):
> (1) The indictment must include both the principal charge and a charge of
> previous convictions. The indictment must allege with particularity the nature or
> description of the offense constituting the previous felonies, the state or federal
> jurisdiction of previous conviction, and the date of judgment. The indictment shall not

be read to the jury.

      **(2) Separate trials shall be held on the principal charge and on the charge of previous convictions. In the trial on the principal charge, the previous conviction will not be mentioned by the state or the court except for impeachment purposes.**

      (3) If the defendant is convicted on the principal charge, a hearing before the court will then be conducted on the previous convictions.

Rule 6.04, Uniform Criminal Rules of Circuit Court Practice (emphasis added).

Thus, it is clear from the plain language of the rule that this sentencing hearing was mandatory, before the trial court could sentence Petitioner as a habitual offender on the aggravated assault charges. The undersigned has completed a search of the files in Humphreys County Circuit Court in Case No. 4698, and could not locate any record of a presentence investigation, or a sentencing hearing, as required by Rule 5.13(2)(f).1.  In addition, Clyde received ineffective assistance of counsel at that proceeding, because Mr. Mounger failed to object to trial court's failure to follow the applicable rules for a mandatory sentencing hearing, even though Mr. Mounger knew that this conviction would be used as an aggravating factor in Clyde's Capital Murder trial just a few weeks later.

In *Seely v. State*, 451 So.2d 213, 214-15 (Miss. 1984), the Mississippi Supreme Court clearly established the **mandatory** nature of this Rule, holding:

      While this record is by no means clear as to the stage at which Seely was not allowed to be heard, we point out to the trial judges, prosecutors and members of the bar that in prosecutions under § 99-19-81 a **bifurcated trial is mandatory**. Hurt v. State, 420 So.2d 560 (Miss.1982); Wilson v. State, 395 So.2d 957 (Miss.1981); Rule 6.04 Uniform Criminal Rules of Circuit Court Practice. A jury is to decide the question of guilt and subsequently the circuit judge is to serve as the finder of fact in determining whether the habitual offender part of the indictment is established by the requisite degree of proof. The state has the same burden of proof as to the habitual offender portion of the indictment as it has on the principal charge. The defendant also has the same rights at both stages of trial.

      **There appears to be some tendency to routinely allow the state to produce some documentation of prior offenses and for the trial court to perfunctorily find the defendant an habitual offender, then routinely pass out the sentence mandated by § 99-19-81. We wish to leave no doubt that the requirement of a bifurcated trial means a full two-phase trial prior to any finding that a defendant is an habitual**

**offender and subject to enhanced punishment. Further, a complete record of the second part of the trial must be made.**

        While we recognize that Rule 5.13(2)(f) of the Uniform Criminal Rules of Circuit Court Practice does not require a record to be made of the sentencing proceeding in a typical felony case where there is a bifurcated trial, that rule does not apply where **the bifurcated trial is a mandatory proceeding**.

*Seely*, 451 So.2d at 214-15 (emphasis added).

In the case at bar, Petitioner respectfully submits that the trial court's failure to conduct a bifurcated sentencing hearing in Humphreys County Circuit Court Case No. 4698 on the charge that Clyde should be sentenced as a habitual offender to life without parole on the convictions for aggravated assault and felon in possession of deadly weapons, violated Petitioners fundamental right to due process of law. These charges were pursued by the State for the sole purpose of using these convictions as aggravating factors to seek the death penalty in Clyde's Capital Murder trial. Therefore, Petitioner should be allowed to collaterally attack these convictions at this time. Petitioner respectfully submits that he may be able to defend against any alleged procedural defenses asserted in regard to this claim based on his attorney's deficient performance in failing to assert and protect this right. *Martinez v. Ryan*, 566 U.S. 1 (2012).

### E.      CLAIM XVI:  CUMULATIVE ERROR.

Claim XVI is a claim that the accumulation of errors committed by trial and appellate counsel in this case, requires the granting of habeas relief. Although this claim was raised and addressed on both direct appeal and in the first post-conviction petition, *see Smith I*, 729 So.2d at 1226 and *Smith II*, 877 So.2d at 397-98, Petitioner respectfully submits that the resubmission of this claim in a successive state post-conviction petition is both appropriate and necessary, to allow the state court the opportunity to address this issue in light of the additional claims that

have been identified and asserted by federal habeas counsel.

In the context of post-conviction claims for ineffective assistance of counsel, a reviewing court also assesses the totality of the circumstances in order to determine whether the cumulative prejudice accruing to the accused as a result of counsel's errors has "rendered the result unreliable, necessitating reversal under Strickland's second prong." *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984).

The standards for imposing the death penalty are different from all other criminal cases. Ring v. Arizona, 536 U.S. 584, 606 (2002). The "qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed," *Lowenfield v. Phelps*, 484 U.S. 231, 238-39 (1988) (quoting *Lockett v. Ohio*, 438 U.S. 586, 604, (1978) (plurality opinion)). When a defendant's life is at stake, no matter how reprehensible the conduct, there is "an acute need for reliability." *Monge v. California*, 524 U.S. 721, 732 (1998). This requires the courts to be "particularly sensitive to insure that every safeguard is observed." *Gregg v. Georgia*, 428 U.S. 153, 187 (1976) (plurality opinion). This includes verifying that the jury was properly presented with mitigating evidence to consider at the sentencing phase. *Williams v. Taylor*, 529 U.S. 362, 395-98 (2000); *Eddings v. Oklahoma*, 455 U.S. 104, 116-17 (1982).

Review of death penalty cases must be undertaken with "painstaking care," *Burger v. Kemp*, 483 U.S. 776, 785 (1987), because the death penalty is "profoundly different from all other penalties," *Eddings*, 455 U.S. at 110, and "unique 'in both its severity and its finality,'" *Monge*, 524 U.S. at 732.

In Clyde's case, the evidence strongly supports his claim that the performance of his trial, appellate, and post-conviction counsel suffered multiple deficiencies. Even if none of

28

those deficiencies, standing alone, were so prejudicial as to warrant relief, Petitioner

respectfully submits that he should be allowed to present to the state court his claim that in the

aggregate, these deficiencies warrant relief. This includes the conflict of interest by his trial

and appellate counsel, the failure to raise the issue that one of the convictions used as an

aggravating factor had been reversed, and because the jury was not provided with available and

essential information about Clyde's family life, personal history, background, and mental

health, so that the imposition of the death sentence in this case is not as reliable as the

Constitution requires. Under these circumstances, Petitioner respectfully submits that death

sentence is tainted by constitutional error, and he should be allowed to present the cumulative

prejudice argument to the state court in a successive petition.

## V. CONCLUSION

In Mississippi, the state courts permit prisoners who have been sentenced to death to

overcome procedural bars to successive state post-conviction petitions based on claims of

ineffective assistance of post-conviction counsel. *See, e.g., Grayson v. State,* 118 So. 3d 118,

126 (¶ 14) (Miss. 2013); *Knox v. State*, 75 So.3d 1030, 1036-37 (¶ 18) (Miss. 2011) (citing cases

in which the Court approved applications filed by Earl Wesley Berry and Dale Leo Bishop to file

successive motions for post-conviction relief in *Berry v. State*, 2008–DR–00717 (order entered

May 5, 2008) and *Bishop v. State*, 2008–DR–1122 (order entered July 9, 2008)); *See Jackson v.

State*, 732 So.2d 187, 191 (¶ 12) (Miss.1999)(first recognizing that defendants in death penalty

cases were entitled to court-appointed counsel in state post-conviction proceedings). Petitioner

seeks to assert successive post-conviction claims in the state court in this case.

As with numerous other death row prisoners in Mississippi, Petitioner respectfully submit

that his habeas proceedings should be stayed, so that he will have the opportunity to pursue

available state court remedies as to his unexhausted claims. The Mississippi Supreme Court has reaffirmed that it will overlook procedural bars in order to consider issues regarding fundamental rights. *See, e.g., Means v. State*, 43 So. 3d 438 (Miss. 2010); *Rowland v. State*, 42 So. 3d 503 (Miss. 2010). The federal courts have entered orders granting Motions to Stay in the following cases: *Joseph Patrick Brown v. Fisher*, No. 5:12CV91HSO (S.D. Miss. Sep. 2, 2015)( Order Granting Motion to Stay and Administratively Closing Case); *Grayson v. Epps*, No. 1:04-CV-00708-CWR (S.D. Miss. May 11, 2012)(Order Staying Case); *Jordan v. Epps*, No. 4:06CV69TSL (S.D. Miss. Mar. 21, 2013)(Order Staying Case); *Knox v. Epps*, No. 3:05cv360DPJ (S.D. Miss. Mar. 19, 2013)( Order Staying Case); *Thong Le v. Epps*, No. 1:07CV1128LG (S.D. Miss. July 9, 2013)(Order Staying Case); *Underwood v. Epps*, No. 3:06CV273DPJ (S.D. Miss. Sep. 18, 2013)(Order Staying Case); *Walker v. Epps*, No. 1:97CV29KS (S.D. Miss. Feb. 21, 2013)( Order Staying Case). Exhibit C.

In *Knox v. State*, No. 2014-DR-00849-SCT (filed Sep. 15, 2016), the Mississippi Supreme Court entered an order allowing a death-sentenced prisoner to seek funding and discovery in a successive state court petition. This unpublished order is attached as Exhibit D. Previously, most of the prisoners seeking successive relief were able to be represented by attorneys from the state Office of Capital Post-Conviction Counsel. Clyde Wendell Smith, like Steve Knox, was previously represented by that Office. The Mississippi Supreme Court has now made it clear that those in Clyde's position will have the opportunity to develop facts in support of their claims that are presented through successive petitions in state court.

Moreover, the Fifth Circuit has recently clarified that habeas counsel may receive funding to pursue additional remedies even if no funding is available from the state. *Wilkins v. Davis*, No. 15-70033 (5th Cir. Aug. 10, 2016). Because Petitioner diligently sought to raise the

unexhausted claims in federal court, and because recent orders and decisions confirm the availability of state court remedies, Petitioner submits that he meets the criteria set out in *Rhines v. Weber* for a stay of the instant proceedings. Therefore, Petitioner respectfully requests that this Court grant the motion to stay these proceedings, and hold these matters in abeyance until the Mississippi Supreme Court has the opportunity to address the unexhausted claims.

Petitioner has not failed to exhaust his state court remedies because of dilatory tactics. *Rhines*, 544 U.S. at 277. Petitioner was represented by post-conviction counsel appointed by the Mississippi Supreme Court, because the state office of capital post-conviction counsel was unable to handle the office's case load. Petitioner had every right to, and did, assume that appointed counsel would conduct a diligent investigation and marshal the readily available evidence concerning the claims set forth in this Motion. However, counsel failed to do so. Unlearned in the law and unable to investigate his own case, Petitioner had no way of developing the evidence necessary to pursue these claims. In federal court, counsel developed the facts that support the unexhausted claims, and now he requests leave to present these claims to the state court. Furthermore, this Motion to Stay Proceedings is not filed for the purpose of undue delay, but rather, to allow the state court to consider the claims which have not previously been asserted in the state courts on behalf of Petitioner. This is essential to satisfy the exhaustion requirements under the current rules governing federal habeas proceedings. Finally, Petitioner respectfully submits that the information set forth below clearly shows that that the unexhausted claims asserted by Petitioner have merit. Therefore, the standards set forth in *Rhines*, 544 U.S. at 278, have been satisfied.

Since the Knox decision, the Mississippi Supreme Court has remanded at least two cases for evidentiary hearing to address claims that prior state post-conviction counsel did not raise.

31

*See Walker v. State,* 131 So. 3d 562 (Miss. 2013); *Thong Le v. State*, No. 2013-DR-00327-SCT

(Unpublished Order filed Jan. 29, 2016). In addition, *Grayson v. State*, 118 So. 3d 118, 126 (¶

14) (Miss. 2013), even though substantive relief was denied, the Mississippi Supreme Court

affirmed the right of death-sentenced prisoners to receive the effective assistance of post-

conviction counsel. The Court stated: "[B]ecause this Court has recognized that PCR

proceedings are a critical stage of the death-penalty appeal process at the state level, today we

make clear that PCR petitioners who are under a sentence of death do have a right to the

effective assistance of PCR counsel."

Petitioner has shown that his unexhausted claims are potentially meritorious and that he

has an available state court remedy. The holdings of the Mississippi Supreme Court leave no

doubt that a challenge to post-conviction representation in a successive state court application is

available to Petitioner, and that state law will allow him to use the deficiencies of post-conviction

representation to establish cause for not raising the challenge to trial counsel's penalty phase

performance.

Respondents may argue that the unexhausted claims will be barred in state court due to

the statute of limitations. However, the Mississippi Supreme Court has not applied a statute of

limitations bar in these types of successive petitions. More importantly, the state court has held

that there is no statute of limitations for successive state court petitions for post-conviction relief.

Bell v. State, 66 So.3d 90, 93 (Miss. 2011) (noting absence of limitations period in post-

conviction statute to file successive application).

Because Petitioner's unexhausted claims are potentially meritorious, Petitioner

respectfully submits that this Court should stay these proceedings to permit exhaustion. In fact,

in similar instances, other district courts have issued stays to permit exhaustion of state court

remedies based on a challenge to the performance of post-conviction counsel.

WHEREFORE, for the foregoing reasons, Petitioner requests that this Court stay his pending petition for federal habeas corpus relief to allow him to pursue available state court remedies for unexhausted claims. Petitioner also requests any additional relief the Court believes to be just and proper under the facts and circumstances presented in this case.

Respectfully submitted, this the 12th day of December, 2018.

CLYDE WENDELL SMITH, PETITIONER

By:     s/ David L. Calder
        David L. Calder, MSB # 7686
        P.O. Box 111
        Oxford, MS 38655
        Phone: (662) 915-7384
        Cell: (662) 832-1354
        Fax: (866) 474-0923
        E-mail: davidcalder23@gmail.com

        Marie F. Donnelly
        Illinois Bar No. 6277008
        P.O. Box 6528
        Evanston, IL 60204
        Phone: (773) 680-7042
        E-mail: mfdonnelly05@gmail.com

        COUNSEL FOR PETITIONER

**CERTIFICATE OF SERVICE**

I certify that I have served a copy of the foregoing petition on the following via the Court's ECF system on December 13, 2018.

Marvin White, Special Assistant Attorney General
Jason L. Davis, Special Assistant Attorney General
Brad A. Smith, Special Assistant Attorney General
P.O. Box 220
Jackson, MS 39205-0220

Respectfully submitted, this the 13th Day of December, 2018.

s/ David L. Calder
David L. Calder, MSB # 7686